FIRST CONGREGATIONAL SOCIETY IN BECKET *vs.* TIMOTHY SNOW & another.

Two persons, one as principal and the other as surety, signed a promissory note, the consideration of which was a loan of money to the former, and the principal, at the same time, gave the surety a mortgage, conditioned that the mortgagor should pay the note to the promisee and save the mortgagee harmless therefrom, and should also pay a debt due from himself to the mortgagee; but the

First Congregational Society in Becket *v.* Snow & another.

mortgage was not the inducement for the loan, nor was it made at the request, or for the benefit, or by the procurement, of the promisee: The mortgagor paid the interest on the note for several years, but no part of the principal, or of the debt due from him to the mortgagee, and afterwards died intestate and insolvent, and his estate was never administered upon: The mortgagee was never called upon to pay and never paid either the interest on the note, or any part of the principal, and the recovery of the note against him became barred by the statute of limitations: The mortgagee afterwards sold and conveyed his interest under the mortgage, for a valuable consideration, secured by notes of hand, without notice to the purchaser, or knowledge on his part, that the promisee claimed any interest therein, by way of trust or equitable lien or otherwise; and subsequent conveyances and dispositions of the mortgaged premises were made in like manner, without knowledge or notice of any such claim: The promisee, having brought his bill in equity against the mortgagee and the purchaser under him, praying that the mortgagee might be decreed to pay or assign to the plaintiff, as the equitable owner, the proceeds of the sale to such purchaser; and that the latter might be decreed to hold the premises as the trustee of the plaintiff, subject to his equitable lien, and as security for the payment of his note, and also to pay to the plaintiff, as equitably entitled thereto, the amount due from such purchaser to the mortgagee, for the premises: — It was held, that the bill could not be sustained.

THIS was a bill in equity, in which the plaintiffs set forth the following case :

On the 20th of October, 1834, Elisha Adams, as principal, and the defendant, Snow, as surety, by their note, promised to pay A. N. Dewey, treasurer of the plaintiffs, or his successor in office, the sum of $329, by the 1st of April then next, with annual interest.

On the same day, Adams, by a deed duly executed, which was recorded the next day, made a mortgage of certain real estate to Snow, to secure him against his liability as surety on the note to the plaintiffs, and also to secure the payment of a note from Adams to Snow of $71. The condition of the mortgage was, that Adams should pay the note for $329, on which Snow was surety, to the plaintiffs, and the note for $71, to Snow. The mortgage was made subject to a prior mortgage to the Massachusetts Hospital Life Insurance Company for $900.

The plaintiffs alleged, that, by the deed to Snow, he became seized in fee and in mortgage, and in trust for them as holders of Adams's note, and subject to the equitable lien created by the deed for the payment thereof.

On the 11th of July, 1840, Adams released to Snow all his right, &c., in the premises.

The consideration of the note from Adams and Snow to the plaintiffs was a loan of money by the latter to Adams. The note was given to the treasurer for the use and benefit of the plaintiffs, who, at the date thereof, became, ever since had been, and then were the holders of the same. Interest was paid thereon by Adams to January 1st, 1841. No other payment had been made; and the principal sum, and interest from that date, were due at the time of filing the bill. Adams had long since died insolvent and intestate, and no administration had ever been taken on his estate.

On the 11th of July, 1840, Adams released to Snow all his right, &c., in the premises; and on the 12th of April, 1845, Snow sold and conveyed the premises (subject to the prior mortgage above mentioned) to the other defendant, William E. Austin, for the consideration of $766·85, which sum had been duly paid in money and notes.

The plaintiffs alleged, that Austin had notice that the premises were held by Snow in trust for them, and subject to their equitable lien; and that the lien, which attached to the premises in the hands of Snow, as mortgagee, remained attached thereto in the hands of Austin, as his grantee, with notice.

On the 1st of April, 1846, the plaintiffs demanded of Snow such part of the proceeds of the sale of the premises as they claimed to be entitled to; but he refused to deliver the same.

The prayer of the bill was, that Snow might be decreed to pay or assign to the plaintiffs, as the equitable owners, the proceeds of the sale to Austin; and that Austin might be decreed to hold the premises as the trustee of the plaintiffs, and subject to their equitable lien, and as security for the payment of their note, and to pay the amount due to Snow for the premises to the plaintiffs, as equitably entitled thereto.

The defendant Snow, by his answer, admitted the making of the note and mortgage, the death, &c., of Adams, the

conveyance to Austin, as set forth in the bill, and other allegations in the bill, not hereinafter denied ; but he alleged, that, by virtue of the mortgage by Adams to him, he became seized of the premises in fee and in mortgage to his own use, and the use of his heirs and assigns forever, and to the use of no other person whatever, as was apparent from the express language of the deed; and he denied, that he was seized of the premises in trust for the plaintiffs, as the holders of Adams's note, as set forth in the bill, or that by force of the mortgage, a trust or equitable lien upon the premises was created for the security and payment of the note to the plaintiffs.

The defendant further averred, that the plaintiffs made the loan of $329, to Adams, upon the sole security of the note given to their treasurer by Adams and the defendant; that the plaintiffs were no parties to the mortgage, nor was the same made at their request, or for their benefit, or by their procurement, nor were they in any way induced to make the loan in consideration of the making of the mortgage; that Adams, being desirous to borrow the money of the plaintiffs, applied to the defendant to become his surety in the note ; that the defendant did agree to become his surety accordingly, upon Adams's agreement with him to give him a mortgage, to secure the payment of a debt then due from Adams to him of $71, and to indemnify and save him harmless against his liability as surety to the plaintiffs on the note to them of $329 ; that he had never derived or received any benefit or advantage from the mortgage except as security for the payment of $71, due to him from Adams; and that neither Adams nor Austin, nor any other person, had paid the defendant any part of the note for $329, and that no proceedings had ever been instituted by the defendant upon the mortgage to enforce the payment of such note.

The defendant Snow also alleged, that Adams, on the 27th of March, 1837, (which was previous to his release to Snow,) released the mortgaged premises to Eliada Kingsley and Russell R. Kingsley (who shortly afterwards conveyed his interest to the former), for the consideration of $300, paid by

them, and, at the same time, took from them their bond conditioned to reconvey the premises to him, upon his paying the said sum of $300 and interest within two years, and upon certain other conditions recited in the bond, namely, that Adams should pay them all such sums as they might pay to extinguish previous incumbrances on the premises; that Adams never paid the $300 or any part of the same to the said Eliada, nor any sum which had been paid by the latter to extinguish prior incumbrances; that, on the 11th of April, 1840, the said Eliada mortgaged the premises to the defendant and one Kendall Baird, as security to indemnify them against their liability as sureties on a note to the Housatonic Bank, for $475, of which the defendant was afterwards compelled to pay $150·66, which had not been repaid, but, with the interest thereon, still remained due to the defendant, and, for which, (the said Eliada having since died wholly insolvent), the defendant had no security but the said mortgage.

The defendant Snow further alleged, that, after the making of the last mentioned mortgage, the said Eliada released his interest in the premises to one Huldah Lester, for a valuable consideration, by a deed which was executed previously to the deed from the defendant Snow to the defendant Austin; that the right in equity of Adams to redeem the premises was seized and sold on execution in June, 1840, by Jabin B. Williams, who, on the 29th of August in the same year, by his deed of release, conveyed to the defendant all the right acquired by him in virtue of the sale on execution; that Adams was a poor man and remained in possession of the premises to his death in March, 1845, without objection on the part of the plaintiffs, or of any one else, and without the payment of more than a very small sum as rent; that, on the 1st of April, 1845, the defendant Snow conveyed the premises to the other defendant Austin, by a deed of warranty, subject to the mortgage to the Massachusetts Hospital Life Insurance Company; that the farm, of which the premises consisted, was then valued at $1700, and the amount due on

the said mortgage being $933, a balance was left of $767, for which the said Austin gave his notes, which the defendant Snow then held; that the defendant Snow claimed to retain to his own use the sum due him on the mortgage given by said Adams and interest, together with the interest paid by him on the mortgage to the Hospital Life Insurance Company, with interest on the same, and the taxes on the premises; and that the said Eliada Kingsley, after the taking of his mortgage from Adams, paid sundry sums of money on the mortgage to the insurance company, and also paid the interest for one year, from April 1st, 1836, to April 1st, 1837, on Adams's note to the plaintiffs.

The defendant Snow further averred, that, at the time of his conveyance to the other defendant, and long before, he had ceased to be liable to pay the note signed by him as surety for Adams to the treasurer of the plaintiffs, and the recovery thereof had been barred by the statute of limitations, and, that having held the mortgage simply as surety (except as to his own debt of $71), he supposed and believed, and still believed, that he had no claim or right by virtue thereof, and that the premises would be held by virtue of the subsequent deeds, subject to the mortgage to the Life Insurance Company, and to the debt to himself of $71; and that the plaintiffs, in his belief, had knowledge of such subsequent conveyances, and never pretended to have any claim on the premises, or that the defendant held the same in trust for them, until long after the conveyance from him to Austin.

This defendant also alleged, that, out of the purchase money of the premises, he ought to be paid his own debt, and all sums which he had paid, as before stated, together with the sum paid by him as the consideration of the deed of release from Williams to him, and the sums paid by Kingsley, deducting therefrom what the defendant had received as rent.

The defendant further answered, that neither Kingsley nor Lester had any knowledge that the plaintiffs claimed or pretended that he held the mortgage in trust for them, and they had and claimed title under the mortgage to Eliada and Russell

Kingsley; that if any balance should remain in the hands of the defendant, after payment of the claims above mentioned, it ought in equity to be paid to the said Lester; and that the defendant made the deed to Austin, expecting to pay such balance to her, and she expecting to receive it.

The defendant denied, that he gave any notice to Austin, and alleged that he had no knowledge or belief that Austin, at or before the conveyance to him, had any notice, that he, the defendant Snow, held the premises in trust for the plaintiffs.

He also alleged, further, that prior to making the conveyance to Austin, he had repeatedly offered to convey to the plaintiffs all his title in the premises, provided the plaintiffs would pay his claims, and make a deduction of fifty dollars from their demand; which offer was rejected by the plaintiffs.

The defendant, in conclusion, denied that there was any trust created in favor of the plaintiffs, or any of which the court had jurisdiction; that if the court should decide that there was a trust, it was one which ought not to be enforced; but, that if enforced, all sums due the defendant for his debt of $71, — for payment of interest to the Life Insurance Company, — all sums paid as the consideration of the release to him, — the amount paid by him as surety for Kingsley to the Housatonic Bank, — the amount paid by Kingsley for interest, — together with a reasonable compensation for his services as trustee, and for answering to this suit, — should be deducted out of the purchase money, and the balance only, if any, paid to the plaintiffs.

The defendant Austin, in his answer, admitting the conveyance by Snow to him, averred that the same was made subject to the mortgage already mentioned to the Massachusetts Hospital Life Insurance Company for the sum of $933, which this defendant assumed to pay, as a part of the consideration for the purchase; that for the balance, being $767 he gave his notes on interest to Snow, on which only about $20 had been paid; that he took the conveyance in the

belief that Snow was the lawful owner of the premises, and had good right to sell and convey the same ; that he had no notice that Snow held the premises in trust for the plaintiffs, or that there were any liens or incumbrances on the same except the mortgage aforesaid, which he had assumed to pay, or that the premises were charged with any trust whatever ; but, on the contrary, that he bought the premises in good faith, and in the belief that he acquired a good title by his deed ; nor did he know that any thing was due on the mortgage given by Adams to Snow, or that the plaintiffs pretended to any claim on the mortgaged premises, until long after the conveyance to him ; that the said note for $ 329 had been due upwards of ten years, at the time of the conveyance to him ; and that if there were any such trust between Snow and the plaintiffs, there was none between them and this defendant, and that he ought to hold the mortgaged premises discharged of said trust.

The cause was argued on the bill and answer, at the September term, 1847, by *W. Porter*, for the plaintiffs, and *H. Byington*, for the defendants.

The opinion of the court was delivered at the September term, 1848, by

Shaw, C. J.   This case being set down to be heard on bill and answer, the facts stated in the answer are therefore not controverted, but admitted to be true.   The case, upon the facts, is a very complicated one ; but without going at large into it, it will be sufficient to allude briefly to the facts, and to state the questions arising upon them.   The case, in many respects, is like that of *Eastman* v. *Foster*, 8 Met. 19, but in some respects it differs essentially.

As to the jurisdiction of this court in equity, that case presented a question as to the distribution of the proceeds of an insolvent estate, of which the court had jurisdiction by the express provisions of the statute, whether the property was chargeable with a trust, or not.   And the only question was, whether, in an equitable distribution of effects, amongst parties legally and equitably entitled thereto, property which

had been mortgaged to a surety, for the sole purpose of securing the payment of the debts, for which he was surety, should be deemed subject to an equitable lien in favor of the creditors having such claims.

A second marked distinction is, that in that case there had been no alteration of the property ; parties had been exonerated by the statute of limitations, which they might or might not plead ; but the mortgaged premises had not been released, or made the subject of any subsequent mortgage, nor did any claim of any subsequent attaching creditor or incumbrancer intervene ; it was solely a question between one class of creditors claiming an equitable lien under those mortgages, and the general creditors, who could only claim the property, as it beneficially stood in the hands of their debtor, at the time of the institution of the proceedings in insolvency.

In this case, the complainants can only claim equity jurisdiction for the court on the ground of trust. Certainly there was no express trust ; it was a mortgage from Adams to Snow to secure to him a debt of $71, and to indemnify him against his liability as surety on the note, in virtue of which the complainants now seek to charge the land. Such a trust is not necessarily implied from the fact of giving the mortgage, and it is expressly denied by the answer. But further, it is stated and not denied, that the mortgage from Adams to Snow was conditioned to secure a debt due from the mortgagor to the mortgagee of $71. This debt has never been paid. How can any body, having a mere equitable lien or claim, take the property out of the hands of one who has an equity, accompanied by the legal title, in any other mode than by redeeming ?

But further, we think the subsequent conveyances, mortgages, sales of the equity of redemption, without notice or claim, legal or equitable, on the part of these complainants, for a long series of years, after the debtor was dead, and after the liability of the surety was barred by the statute of limitations, must now preclude them from setting up such a claim.

*Bill dismissed.*